Filed 11/10/14  Mahmud v. Ralphs Grocery Co. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| STEPHANIE RABB MAHMUD, | B237636 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC410754) |
| v. | |
| RALPHS GROCERY COMPANY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Reversed and remanded with directions.

Reed Smith, Linda S. Husar and Steven B. Katz for Defendant and Appellant.

Karasik Law Firm and Gregory N. Karasik for Plaintiff and Respondent.

_____

The trial court denied the petition of appellant Ralphs Grocery Company (Ralphs) to compel arbitration of a wage dispute with its former employee, respondent Stephanie Rabb Mahmud, relying on the four-factor test set forth in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*). While the appeal was pending, the California Supreme Court held in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) that *Gentry* had been abrogated by the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740] (*Concepcion*). As the legal rationale that formed the basis for the trial court's ruling has been abrogated and Mahmud presented no other basis for denial of the petition to compel, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

In March 2009, Mahmud brought suit alleging that Ralphs violated provisions of the state Labor Code requiring employers to provide employees meal breaks, to allow rest periods, to pay for unused accrued vacation time upon termination, and to pay all wages owed upon termination. Respondent sought certification of multiple classes of similarly situated Ralphs' employees, including a meal period class, a rest period class, and a final wages class.

B. *Prior Proceedings*

1. *Petition to Compel Arbitration*

Ralphs petitioned to compel arbitration of the dispute. Ralphs presented evidence that in February 2008, Mahmud had signed an application for employment stating that she "acknowledge[d] and underst[ood]" Ralphs had a dispute resolution program that included a Mediation & Binding Arbitration Policy [Arbitration Policy] which applied to "all employees and applicants for

2

employment," and to "any employment-related disputes that exist or arise between Employees and [Ralphs] that would constitute cognizable claims or causes of action in a court or government agency under applicable law including individual statutory claims or disputes." In signing the application, Mahmud agreed to be "bound by the provisions, terms, and conditions of the [Arbitration] Policy" and to waive her right to a judge or jury trial or to litigate proceedings in a local, state or federal court or agency.

Ralphs' Arbitration Policy defined covered disputes as "employment-related disputes [¶]. . . [¶] which involve the interpretation or application of the Arbitration Policy, the employer/employee relationship, an Employee's actual or alleged employment with Ralphs . . . , the termination of such employment, or applying for or seeking such employment." It provided that arbitration proceedings would be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq., FAA), the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, except that there were no "class actions or Representative Actions permitted." It further stated: "[T]here is no right or authority for any Covered Disputes to be heard or arbitrated on a class action basis, as a private attorney general, or on bases involving claims or disputes brought in a representative capacity on behalf of the general public, or other Ralphs employees (or any of them), or of other persons alleged to be similarly situated."

### 2. *Mahmud's Opposition*

In opposing the petition to compel arbitration, Mahmud raised three arguments. She contended the arbitration agreement was unenforceable under *Gentry*, *supra*, 42 Cal.4th 443, in which the California Supreme Court had held that where "the prohibition of classwide relief would undermine the vindication of the employees' unwaivable statutory rights and would pose a serious obstacle to

3

the enforcement of the state's overtime laws," and where the trial court determines that classwide adjudication "would be a significantly more effective way of vindicating the rights of affected employees than individual arbitration," the class action waiver should not be enforced. (*Id*. at p. 450.) The Supreme Court had stated in *Gentry* that in determining whether to enforce a contractual class action waiver, the trial court should consider four factors: "[(1)] the modest size of the potential individual recovery, [(2)] the potential for retaliation against members of the class, [(3)] the fact that absent members of the class may be ill informed about their rights, and [(4)] other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration." (*Id*. at p. 463.) Mahmud presented evidence that the individual damages for the Labor Code violations alleged in the complaint would be insufficient to support separate litigation by each wronged employee, that she had been unaware of her rights under the Labor Code with respect to meal breaks and rest periods during her employment, and that employees who complained about working conditions were fired or treated badly.

Mahmud also contended Ralphs was collaterally estopped from enforcing the arbitration agreement based on an unpublished decision in an earlier litigation, in which the Court of Appeal had held that similar provisions in Ralphs' 2001, 2003 and 2004 Arbitration Policy precluding all class actions rendered the arbitration agreements signed by the plaintiffs in that litigation unconscionable.[1]

---

[1] An unpublished opinion may be cited or relied on when it is relevant under the doctrines of law of the case, res judicata or collateral estoppel. (Rules of Court, rule 8.1115(b)(1).) The case on which Mahmud then relied to support collateral estoppel -- *Massie v. Ralphs Grocery Co*. (May 14, 2007, B187844) 2007 Cal.App.Unpub. LEXIS 3818 -- was decided prior to the Supreme Court's decision in *Gentry*, and relied primarily on the pre-*Gentry* decision *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, abrogated in *Concepcion*, *supra*, 563 U.S. __ [131 S.Ct. 1740]. The matter was
*(Fn. continued on next page.)*

4

Finally, Mahmud contended that the arbitration agreement was "tainted with illegality" because it prohibited an employee from acting as a private attorney general under the Private Attorneys General Act of 2004 (Labor Code, § 2699 et seq. (PAGA)).[2] Mahmud did not assert that any provision of the arbitration agreement other than the class action prohibition rendered it unenforceable or substantively unconscionable. She presented no evidence concerning the circumstances under which she signed the agreement or any other facts pertinent to the issue of procedural unconscionability.[3]

Relying on *Gentry*, the trial court found the class action waiver unenforceable because there was no practical way to vindicate the potential claimants' statutory rights outside of class litigation, due to the large number of claimants with relatively small claims. Ralphs appealed.

---

remanded for reconsideration in light of *Gentry* (see *McLeod v. Ralphs Grocery Co.* (April 7, 2008, B187854) 2008 Cal.App.Unpub. LEXIS 2839, went through a second appeal after the trial court found the existence of the four *Gentry* factors, and was affirmed. (*Massie v. Ralphs Grocery Co.* (April 2, 2012, B224196) 2012 Cal.App.Unpub. LEXIS 2508.) Mahmud no longer relies on *Massie*.

[2] In PAGA, the Legislature created a mechanism for aggrieved employees to file representative actions to recover penalties from employers; the statute acts as an alternative to enforcement of the Labor Code by the Labor Commissioner. (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 650; *Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 337.) Mahmud raised this contention although she had asserted no PAGA claim in her complaint, and did not seek to litigate the matter as a representative nonclass action under PAGA.

[3] As explained in *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle Museum*): "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citation.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.]"

5

### 3. *Prior Appeal*

While the prior appeal was pending the United States Supreme Court rendered its decisions in *Preston v. Ferrer* (2008) 552 U.S. 346 (*Preston*) and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*. (2010) 559 U.S. 662 (*Stolt-Nielsen*). In *Preston*, the court held that the California Talent Agencies Act (Labor Code, § 1700 et seq.), which granted the Labor Commissioner exclusive original jurisdiction to determine the validity of an agreement between an entertainer and an unlicensed individual or entity purporting to act as a talent agent, was preempted by the FAA when the parties had agreed to arbitrate all questions arising under their contract. (*Preston, supra,* at p. 359.) *Stolt-Nielsen* held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." (*Stolt-Nielsen, supra,* at p. 684, italics omitted.) Ralphs contended these decisions undermined *Gentry* and required reversal of the trial court's order. By opinion filed January 5, 2011, we concluded the trial court's ruling was appropriate under *Gentry* and not inconsistent with either decision. Accordingly, we affirmed the order denying Ralphs' petition.

### C. *Proceedings After Remand*

After remand, Ralphs filed a renewed petition to compel arbitration, contending that the United States Supreme Court's opinion in *Concepcion*, *supra*, 131 S.Ct. 1740 effectively overruled *Gentry*. In *Concepcion*, the Supreme Court reversed a Ninth Circuit decision that had concluded, relying on the California Supreme Court's decision in *Discover Bank v. Superior Court*, *supra*, 36 Cal.4th 148, that an arbitration provision in a consumer contract that forbade classwide arbitration was unconscionable where it appeared from the allegations of the complaint that a large group of consumers had been cheated out of a small sum.

The United States Supreme Court abrogated the *Discover Bank* rule, concluding it was preempted by the FAA because it interfered with arbitration. (*Concepcion, supra,* 131 S.Ct. at p. 1750.) According to the court: "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Id*. at p. 1748.)

Mahmud opposed the renewed motion. Her opposition raised only two points. First, she contended that *Concepcion* had not abrogated or overruled *Gentry*. Second, she contended that Ralphs' arbitration agreement violated federal common law and the National Labor Relations Act (29 U.S.C. § 151 et seq., NLRA) because it precluded employees from engaging in concerted activity.[4] Mahmud did not raise collateral estoppel as a basis for denying the motion.[5] Mahmud presented no facts to support procedural unconscionability, and raised no challenge to any provision of the arbitration agreement other than the class action waiver.

The trial court denied the renewed motion. This appeal followed.

---

[4]     Mahmud also contended that bars against representative PAGA actions were unenforceable under federal common law and violated the NLRA. Although Mahmud had filed a first amended complaint in September 2009, making minor changes to conform her unfair competition claim to the law, she had still not asserted a PAGA claim.

[5]     The opposition did cite *Brown v. Ralphs Grocery Co*. (2011) 197 Cal.App.4th 489, but only for the proposition that *Gentry* remained the law post-*Concepcion*. In *Brown*, however, the appellate court found that the plaintiff had failed to carry her evidentiary burden under the four-factor test established in *Gentry,* and did not determine "whether, under [*Concepcion*], the rule in [*Gentry*] concerning the invalidity of class action waivers in employee-employer contract arbitration clauses is preempted by the FAA." (*Brown, supra,* 197 Cal.App.4th at pp. 497-498.) Because the plaintiff in *Brown* sought to act as a private attorney general, the court remanded for the trial court to consider whether the PAGA waiver provision in the arbitration agreement could be severed and the remainder of the agreement enforced according to its terms. (*Brown, supra,* at pp. 503-504.) As Mahmud asserted no PAGA claim, the holding in *Brown* is not relevant here.

7

## DISCUSSION

In their original briefs, the parties debated whether *Concepcion* abrogated *Gentry* and whether the NLRA precluded enforcement of the agreement due to the ban on class actions.[6] As these issues were raised in fully briefed cases pending before the California Supreme Court, we stayed the appeal until our Supreme Court could make its position known. In *Iskanian*, *supra*, 59 Cal.4th 348, the court held that "[u]nder the logic of *Concepcion*, the FAA preempts *Gentry*'s rule against employment class waivers." (*Id*. at p. 364.) The court explained: "[T]he fact that *Gentry*'s rule against class waiver is stated more narrowly than *Discover Bank*'s rule does not save it from FAA preemption under *Concepcion*. The high court in *Concepcion* made clear that even if a state law rule against consumer class waivers were limited to 'class proceedings [that] are necessary to prosecute small-dollar claims that might otherwise slip through the legal system,' it would still be preempted because states cannot require a procedure that interferes with fundamental attributes of arbitration 'even if it is desirable for unrelated reasons.' [Citations.] It is thus incorrect to say that the infirmity of *Discover Bank* was that it did not require a case-specific showing that the class waiver was exculpatory. *Concepcion* holds that even if a class waiver is exculpatory in a particular case, it is nonetheless preempted by the FAA." (*Iskanian*, *supra*, at p. 364, quoting *Concepcion*, *supra*, 131 S. Ct. at p. 1753.)

The Supreme Court also considered whether the class action waiver was invalid under the NLRA and concluded in light of the FAA's "'liberal federal policy favoring arbitration'" (*Concepcion*, *supra*, 131 S. Ct. at p. 1745), that sections 7 and 8 of the NLRA do not represent ""a contrary congressional

---

[6]     Mahmud contended in her brief that the bar against PAGA also violated the NLRA. She cited no authority for this proposition, however, and we deem it forfeited.

command""'" "overriding the FAA's mandate [citation]." (*Iskanian*, 59 Cal.4th at p. 373.) The Supreme Court observed that its conclusion was "consistent with the judgment of all the federal circuit courts and most of the federal district courts that have considered the issue." (*Ibid*., citing *Sutherland v. Ernst & Young LLP* (2d Cir. 2013) 726 F.3d 290, 297, fn. 8; *Owen v. Bristol Care, Inc*. (8th Cir. 2013) 702 F.3d 1050, 1053-1055; *Delock v. Securitas Security Services USA, Inc.* (E.D.Ark. 2012) 883 F.Supp.2d 784, 789-790; *Morvant v. P.F. Chang's China Bistro, Inc*. (N.D.Cal. 2012) 870 F.Supp.2d 831, 844-845; *Jasso v. Money Mart Express, Inc*. (N.D.Cal. 2012) 879 F.Supp.2d 1038, 1048-1049.)[7]

In light of the Supreme Court's binding conclusion that *Gentry* was no longer good law and that the NLRA did not override the FAA, we asked the parties for additional briefing. In her supplemental brief, Mahmud argued for the first time that Ralphs is collaterally estopped from litigating the enforceability of its arbitration agreement based on *Chavarria v. Ralphs Grocery Co*. (9th Cir. 2013) 733 F.3d 916, in which the Ninth Circuit affirmed a district court's determination that procedural and substantive unconscionability precluded enforcement of the Arbitration Policy. We need not address this issue. "[C]ollateral estoppel must be raised in the trial court . . . and is waived if not raised below [citation]." (*People v. Gillard* (1997) 57 Cal.App.4th 136, 160; accord, *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 333, fn. 9 [court declined to

---

[7]     The Supreme Court also pointed out that the arbitration agreement at issue "permit[ted] a broad range of collective activity to vindicate wage claims":  it did not "prohibit employees from filing joint claims in arbitration," "preclude the arbitrator from consolidating the claims of multiple employees," or "prohibit the arbitrator from awarding relief to a group of employees." Nor did it "restrict the capacity of employees to 'discuss their claims with one another, pool their resources to hire a lawyer, seek advice and litigation support from a union, solicit support from other employees, and file similar or coordinated individual claims.'" (*Iskanian*, *supra*, 59 Cal.App.4th at p. 374.)

9

take judicial notice of materials from prior lawsuit to determine collateral estoppel, finding absence of "exceptional circumstances" to justify judicially noticing "matters that were not presented to the trial court"].) In neither her opposition to Ralphs' renewed motion to compel arbitration nor her opening brief did Mahmud raise collateral estoppel or cite *Chavarria*, although the district court's decision in *Chavarria* was issued weeks prior to the filing date of her opposition and a year prior to the filing date of her respondent's brief on appeal. (See *Chavarria v. Ralphs Grocer Co.* (C.D. Cal. 2011) 812 F.Supp.2d 1079 [filed September 15, 2011].)[8]

Moreover, confidence in the correctness of the prior judgment for purposes of collateral estoppel is subject to doubt where "a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue." (*Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 941.) In *Macias v. Ralphs Grocery Co.* (August 28, 2008, B202625) 2008 Cal.App.Unpub. LEXIS 6960, the court considered substantially the same Arbitration Policy as in *Chavarria* and reached a contrary conclusion regarding unconscionability. (See also *Covarrubias v. Ralph's Grocery Co.* (N.D. Cal. 2004, September 7, 2004, No. C 02-5465 JSW) 2004 U.S. Dist. LEXIS 18318 [referencing prior order finding plaintiff's arbitration agreement with Ralphs binding, enforceable and not unconscionable].)

Finally, even were we inclined to overlook the waiver and address unconscionability on the merits, Mahmud could not prevail on the record before us. As the California Supreme Court stated in *Pinnacle Museum*, *supra*, 55 Cal.4th

---

[8]    A final district court judgment retains its collateral estoppel effect while the appeal is pending. (*Collins v. D.R. Horton, Inc.* (9th Cir. 2007) 505 F.3d 874, 882; accord, *Tripati v. Henman* (9th Cir. 1988) 857 F.2d 1366, 1367.)

223, the party resisting arbitration bears the burden of presenting evidence to support both procedural and substantive unconscionability, which are evaluated on a "“"“sliding scale"”"”: "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (55 Cal.4th at pp. 246-247; see *Armendariz v. Foundation Health Psychcare Servs.* (2000) 24 Cal.4th 83, 114, italics omitted, quoting *Stirlen v. Supercuts, Inc*. (1997) 51 Cal.App.4th 1519, 1533 [procedural and substantive unconscionability "'must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability'"].) Procedural unconscionability focuses on the circumstances surrounding the execution of the agreement: lack of negotiation, lack of meaningful choice, or insertion of arbitration terms in small type in a prolix printed form. (See, e.g., *Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165.) Unlike the plaintiff in *Chavarria*, Mahmud presented no evidence of the circumstances surrounding her application for employment or her decision to sign the arbitration agreement. Even after the United States Supreme Court's decision in *Concepcion* called *Gentry* into question and led Ralphs to renew its petition to compel arbitration, Mahmud chose to base her opposition entirely on the four *Gentry* factors, providing neither a declaration nor other evidence to support unconscionability on any other ground. In the absence of such evidence, we will not presume procedural unconscionability.

Alternatively, Mahmud contends Ralphs' Arbitration Policy is unconscionable "under [the California Supreme Court's decision in] *Sonic-Calabasas A., Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*)." She cites no provisions of the policy to support that contention, however, and advances no argument explaining how any of the arbitration procedures set forth in the policy

11

demonstrate unconscionability under the standards set forth in *Sonic II.*[9]  She suggests no evidence she could have presented to address the "fact specific inquiry" mandated in *Sonic II.*  "An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority."  (*Bullock v. Philip Morris USA, Inc*. (2008) 159 Cal.App.4th 655, 685.)  "'The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.'  [Citations.]"  (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115, quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p. 627.)  Where "an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority," we treat the point as forfeited.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; accord, *Nelson v. Avondale Homeowners Assn*. (2009) 172 Cal.App.4th 857, 862.)  Any contention appellant may have had with respect to *Sonic II* is forfeited.

---

[9]     In *Sonic II*, the employer unsuccessfully petitioned the superior court to compel arbitration of an ex-employee's administrative wage claim.  The California Supreme Court held that in determining the unconscionability of an adhesive employment-related arbitration agreement that precludes assertion of administrative claims, a court may consider whether the employee has been provided an accessible and affordable forum for effective wage dispute resolution, similar to that provided under the Labor Code for a Berman hearing.  (*Sonic II, supra*, 57 Cal.4th at p. 1146; see Labor Code § 98, et seq., *Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946-947.)  The court further held that "a finding of unconscionability" under this rule "requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided," a "fact-specific inquiry."  (*Sonic II, supra,* at p. 1146.)

## DISPOSITION

The order denying Ralphs' petition to compel arbitration is reversed.  The matter is remanded for entry of an order granting the petition.  Ralphs is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.